A93A1085. NICHOLS v. THE STATE.
(435 SE2d 502)

BIRDSONG, Presiding Judge.

Nikita Nichols a/k/a Nikita Richardo Nichols or William Thompson appeals his conviction of six counts of burglary, one count of aggravated assault, one count of theft of services, and the sentence. *Held*:

1. The grant or denial of a severance motion is within the trial court's discretion. *Freeman v. State*, 205 Ga. App. 112 (421 SE2d 308). Where the offenses are " ' "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan," ' severance lies within the discretion of the trial court." *Bailey v. State*, 157 Ga. App. 222, 223-224 (3) (276 SE2d 843). Compare *Dobbs v. State*, 204 Ga. App. 83 (1) (418 SE2d 443). "The test for the court to consider is '(W)hether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense.' " *Dobbs*, supra at 84. The offenses were committed or initiated within ninety-two days; four of the burglaries were committed in the same apartment complex and within fifteen days of each other; all burglaries were of apartments; all offenses were committed

within two miles of each other. Appellant used the rented apartment, the subject of the theft of services count (Count 8), to store certain stolen property from the burglaries; he also used documents that were missing following a burglary (for which he was not indicted) of an apartment in the same complex as the burglaries subject to Counts 1, 2, 3, and 5, to obtain the right of access to and use of the apartment. The aggravated assault occurred while the burglary charged in Count 5 was in progress. Items taken in the Count 3 burglary were found abandoned in the burglarized apartment where the aggravated assault occurred (Counts 4 and 5). While living in the apartment rented using the missing documents above discussed, appellant committed the Counts 6 and 7 burglaries. These missing documents were subsequently found abandoned in the burglarized apartment subject of Count 7. Items taken in Counts 1, 2, 6, and 7 were found in the apartment subject of Count 8. Appellant has failed to establish by the record that the jury was unable to distinguish the evidence and apply the law intelligently as pertains to each offense. The trial court did not abuse its discretion in denying the motion to sever.

2. The trial court did not err in refusing to strike the averred alias, William Thompson, from the indictment. *Majors v. State*, 203 Ga. App. 139, 143 (7) (416 SE2d 156).

3. The trial court did not err in denying the motion to suppress certain items seized from appellant's apartment. In considering the legality of a seizure, this court may consider all relevant evidence of record. *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784).

(a) To be valid a search warrant must contain an adequate description of the person and/or premises to be searched; the test to be applied is outlined in *Landers v. State*, 183 Ga. App. 691 (1) (359 SE2d 748). A John Doe Warrant is legally sufficient for search of described premises. *Hout v. State*, 190 Ga. App. 700, 701 (1) (380 SE2d 330). The description of the premises to be searched was legally sufficient. *Landers*, supra.

(b) Appellant asserts the search warrant failed to describe sufficiently the items to be seized. "A warrant must describe the items to be seized with sufficient particularity to enable a prudent officer to identify them with 'reasonable certainty.' [Cit.] However, '(w)hen circumstances make an exact description of instrumentalities, a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.' " *Thomas v. State*, 183 Ga. App. 819, 821 (1) (360 SE2d 75). The items were described with sufficient particularity.

Further, the papers identified in the search warrant were not protected private papers under the Fourth Amendment of the United States Constitution, Art. I, Sec. I, Par. XIII, Georgia Constitution of 1983, or OCGA § 17-5-21 (a) (5). Compare *Ledesma v. State*, 251 Ga.

885, 890 (7a) (311 SE2d 427). Moreover, seizure of private papers is not precluded by law where those papers are the instrumentalities of a crime and the search is otherwise lawful. *Ledesma,* supra; compare *Lowe v. State,* 203 Ga. App. 277, 279 (1) (416 SE2d 750).

Further, "[a]n officer conducting a lawful search is not precluded from seizing tangible evidence of the commission of a crime even though that evidence is not specifically listed in the search warrant." *Banks v. State,* 262 Ga. 190, 192 (4) (415 SE2d 634). " 'It is not necessary under the law that the officer know with certainty that the item is stolen at the time of the seizure, only that there be probable cause to believe that this is the case.' " *Jefferson v. State,* 199 Ga. App. 594, 595 (405 SE2d 575).

(c) The record reveals that the officer executing the warrant visually examined items in plain view; however, it cannot reasonably be inferred from the record that the officer moved or physically touched these items prior to seizure. Thus, disposition of this case is not controlled by *Arizona v. Hicks,* 480 U. S. 321 (107 SC 1149, 94 LE2d 347). Compare *State v. Field,* 188 Ga. App. 639 (373 SE2d 815). Even under *Arizona v. Hicks,* supra at 324, mere visual observation of and recording serial numbers from the objects "did not constitute a seizure."

(d) Appellant argues that because the police knew appellant had committed other burglaries they were seeking to find incriminating items from those burglaries during their search, and that accordingly those items were required to be listed on the warrant. In *Horton v. California,* 496 U. S. 128 (110 SC 2301, 110 LE2d 112), the United States Supreme Court in effect modified its plurality holding in *Coolidge v. New Hampshire,* 403 U. S. 443 (91 SC 2022, 29 LE2d 564); no longer is "inadvertence" a necessary condition for a legitimate plain-view seizure. Compare *King v. State,* 200 Ga. App. 801, 804 (4) (409 SE2d 865). " ' "(T)he expectation that . . . evidence will be discovered does not preclude operation of the plain view exception to the warrant requirement." [Cits.]' " *State v. Echols,* 204 Ga. App. 630, 631 (420 SE2d 64); see *King,* supra. "It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton,* supra at 136. We conclude that at the time the items in question were seized they were in plain view and the officer executing the warrant was lawfully engaged in a search of the premises for the documents specified in the warrant. However, "[t]here are . . . two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view [as they were in this case]; its incriminating character must also be 'immediately apparent.' . . . Second, not only must the officer be lawfully located in a place from

which the object can be plainly seen, but he or she must also have[, as the officer here did,] a lawful right of access to the object itself." Id. at 136-137; see *In the Interest of A. B.*, 194 Ga. App. 665 (391 SE2d 683).

Prior to the seizure of all the objects in plain view, the police had probable cause to believe that the objects were the fruits or instrumentalities of a crime; or, in the case of any item from which the identification marks had been removed, an object whose incriminating character was otherwise immediately apparent (see, e.g., OCGA § 16-9-70 (a)), within the meaning of *Horton*, supra. Items may be seized when probable cause exists that such items are tangible evidence of the commission of a crime. OCGA § 17-5-21.

Moreover, as to those items seized whose identification marks (serial numbers) had not been removed, the incriminating character of the items also was immediately apparent to the police before actual seizure was accomplished. Additionally, no seizure occurred of the items which had been stolen during the Mitchner burglary — the stolen property status of which was established only by means of a phone call to police headquarters initiated after the items were observed in plain view and catalogued — until after that call was completed and the officer had probable cause to believe the items had been stolen. Thus, at the time of seizure, the incriminating character of the Mitchner burglary items also was immediately apparent within the meaning of *Horton*, supra.

4. The trial court did not abuse its discretion in failing to strike the juror who apparently had been twice burglarized and whose uncle was murdered within the last year during a burglary. The juror, a paralegal, when specifically asked if she could listen and determine the evidence in fair and impartial manner, replied, "I would like to think I can. . . . I know what it means to be a fair and impartial member of the jury, and to have a fair and impartial trial. All I can say is I don't know." This case lies on a factual continuum between *Walker v. State*, 262 Ga. 694 (424 SE2d 782) and *Johnson v. State*, 262 Ga. 652 (424 SE2d 271). However, we find *Johnson*, supra, controlling.

5. The trial court did not abuse its discretion in limiting appellant's cross-examination regarding burglaries committed in the Southern Trace Apartment complex after the date of the aggravated assault averred in Count 4, even though during his opening statement the prosecutor asserted, "after the stabbing, Detective Cooper will tell you there were no other burglaries attributable to the defendant at that complex." In his proffer, appellant did not assert that any of the burglaries with which he was charged was committed by another person who also committed any of the subsequent burglaries. Compare *Burton v. State*, 191 Ga. App. 822 (2) (383 SE2d 187). Questions of

the relevancy of evidence are within the trial court's discretion; the right of cross-examination is not abridged where the examination is limited by the trial court to relevant matters by proper questioning. *Timberlake v. State*, 200 Ga. App. 64, 66 (2) (406 SE2d 537).

6. The State did not comment impermissibly on appellant's right to remain silent. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent; as to the subject matter of his statements, the defendant has not remained silent at all. *Geter v. State*, 174 Ga. App. 694, 695 (2) (331 SE2d 68); see *Malone v. State*, 181 Ga. App. 563 (2) (353 SE2d 60).

7. "OCGA § 16-8-5 pertinently provides that '(a) person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations . . . or the use of personal property which is available only for compensation.' The usual definition of 'accommodations' is: (a) lodging." *Phillips v. State*, 204 Ga. App. 698, 702 (3) (420 SE2d 316). In this case there is direct evidence that appellant obtained services (that is, the lodging) by deception; in obtaining the apartment, he used the name of another, William Thompson, and stolen identification. He also changed locks on the apartment at least twice, and became delinquent in his rent in the amount of $576.66. The landlord obtained a writ of possession against appellant who filed an answer as "William Thompson." Intent to avoid payment can be proven by circumstantial evidence. See *Williamson v. State*, 191 Ga. App. 388, 389 (381 SE2d 766). Under the directed verdict test of *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) and *Williams v. State*, 199 Ga. App. 566, 567 (1) (405 SE2d 716), the trial court did not err in denying the motion. To support the guilty verdict of theft of services, circumstantial evidence need only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. Viewing the evidence of this case in a light most favorable to the verdict, we conclude that the jury rationally could have found that it excluded every reasonable hypothesis except that of defendant's guilt. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662).

8. The trial court did not err in admitting the DNA evidence. Compare *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436); see *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516). The test for admissibility of novel scientific evidence is whether the procedure or technique has reached a scientific stage of verifiable certainty, or whether the procedure rests on the laws of nature. *Lattarulo*, supra. The trial court need not exclude scientific evidence simply because it bears some possibility of error. Id. Moreover, once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, as was done in this case regarding the disposition of

future DNA cases, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature. Id.

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED AUGUST 26, 1993.

*Luana K. Walsh*, for appellant.

*Lewis R. Slaton, District Attorney, Vivian D. Hoard, Suzanne Wynn, Assistant District Attorneys*, for appellee.